**Harry F. WROBLESKI, Plaintiff,**

v.

**John H. BINGLER, District Director of Internal Revenue, Defendant.**

**Civ. No. 16106.**

United States District Court
W. D. Pennsylvania.
May 19, 1958.

James C. Larrimer, Pittsburgh, Pa., for plaintiff.

Hubert I. Teitelbaum, U. S. Atty., Pittsburgh, Pa.; George T. Rita, Washington, D. C., for defendant.

JOHN L. MILLER, District Judge.

In this action, tried before the court without a jury, the plaintiff, a physician, seeks to recover an alleged overpayment of income tax for the calendar year 1956. The only question presented is whether an amount paid to the plaintiff in that year by the University of Pittsburgh constituted a fellowship grant excludable from gross income under Section 117 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 117, subject to the limitations of § 117(b) (2), or whether that amount represented compensation for services taxable under applicable Regulations. The facts are found specially in accordance with Rule 52, F.R.C.P. 28 U.S.C.A.

Findings of Fact.

1. Harry F. Wrobleski, a Pittsburgh resident, was accepted on July 1, 1955, as a participating graduate physician in a training program in psychiatry at the Western State Psychiatric Institute and Clinic in the City of Pittsburgh.

2. While engaged in the training program in psychiatry during 1956, the plaintiff received a stipend of approximately $3,400 from the University of Pittsburgh.

3. On or before April 15, 1957, the plaintiff filed his individual income tax return for the year 1956 with the District Director at Pittsburgh. On his return, plaintiff claimed a refund of income tax in the amount of $488.40 which had been withheld by the University of Pittsburgh from the stipend paid him and remitted to the defendant.

4. Upon examination of the plaintiff's income tax return, the District Director notified him, on July 8, 1957, that the amount paid him by the University of Pittsburgh did not qualify as a fellowship grant within the meaning of Section 117 of the Internal Revenue Code of 1954 but rather constituted compensation for services rendered since the plaintiff "gave his skill and experience in consideration for monies received."

5. The University of Pittsburgh is an organization within the description of organizations exempt from tax under Sections 501(a) and 501(c) (3) of the Internal Revenue Code of 1954.

6. The Western State Psychiatric Institute and Clinic, established by the Commonwealth of Pennsylvania and leased to the University of Pittsburgh for the sum of $1 a year, was designed to serve primarily as a center for research and education of students and specialists in the field of emotional illness and health. The use and some of the purposes of the Institute have been defined by statute which provides, in part, as follows:

"The Western State Psychiatric Institute and Clinic, located in Allegheny County, shall be used for study and research into the causes, treatment, prevention and cure of the various types of nervous disorders and mental diseases. This institute shall also provide training and teaching both at the undergraduate and at the graduate level of students who, upon graduation, will enter the practice of general medicine, with a technical background of training in mental illness, as well as for the purpose of taking up the great gap between the number of qualified psychiatrists and the number who are needed as a result of the constantly mounting number of persons needing attention for mental disorders." 1949, May 20, P.L. 1643, § 1, 50 P.S.Pa. § 575.1.

Other purposes, described by the statute, are the provision of courses of study for

personnel of the various mental hospitals throughout the Commonwealth, the pursuit of studies for the prevention of mental and nervous disorders of children, the training and teaching of nurses and other personnel needed in the treatment, care and prevention of mental disorders and the study of problems of administration to the end of developing an effective, humane and economical policy for the care of mental illness in Pennsylvania.

7. Graduate physicians, graduate nurses, student nurses and medical students receive training in psychiatry at the Institute. Physicians, like the plaintiff, pursuing the training program in psychiatry are referred to by the Institute as fellows.

8. The fellows are not candidates for degrees and their object is to secure certification in Psychiatry by the American Board of Psychiatry and Neurology, Inc.

9. The training program in psychiatry for physicians continues for three years. During the program those physicians accepted for participation are required to devote their full time and attention to the program for its full duration and are not permitted to be employed by another institution or to engage in the private practice of medicine.

10. The program of study includes extensive classroom and seminar activity, supervised participation in the treatment of in-patients and out-patients, experience in teaching and in administrative matters.

11. Contacts with patients commence in the first year of training with each fellow being assigned a number of patients admitted to the hospital. His work with these patients is under continuous individual supervision. In the second year treatment of patients not in need of hospitalization is emphasized. Regular conferences between the trainee and the chief of the out-patient section are utilized for supervision of therapy and supervision is given by other staff psychiatrists.

12. A fellow's suggestions as to diagnosis or indicated therapy of an individual patient are considered and may play a part in the care of the patient. However responsibility for the diagnosis and control of the care and treatment of the patients at the Institute rests solely with the clinical director and the senior or supervising staffs.

13. Because it is not primarily a service organization, the Institute has fewer patients than the ordinary state mental hospital. Its patients are carefully selected, in part, from persons already confined to state mental hospitals and, in part, from persons with mental or emotional disturbances who volunteer for admission to the Institute.

14. The admission of selected patients is designed to bring into the Institute a cross-section of the types of cases the staff believes necessary for teaching, research and training, including the training of the fellows in the training program in psychiatry.

15. The Institute employs a full time staff of 17 psychiatrists; in addition it enjoys the services of the psychiatric staff of the Medical School of the University of Pittsburgh, of which it is a part. The fellows do not replace personnel who would otherwise have to be employed by the Institute to care for patients.

16. In addition to participation in the care and treatment of patients, fellows in the training program in psychiatry are required to serve as instructors for nurses and medical students. Such instruction is closely supervised and is intended primarily to improve the ability of those in the training program to transmit knowledge of complex subject matters of their field as well as to aid in their own learning and investigations.

17. As part of the third year of the training program, the fellows continue clinical activities and are given the opportunity to engage in several of nume.-

ous elective activities including work with children, juvenile delinquency, adult delinquency, combined with medical consultation to various hospitals in the Pittsburgh area. Those who have no experience in a large mental hospital receive assignments to a nearby state institution.

18. Applicants for a fellowship are not limited to physicians who reside in Pennsylvania. Those accepted in the program have no contractual obligation on completion of their studies to the Institute, the University of Pittsburgh or the Commonwealth of Pennsylvania.

19. The plaintiff was not primarily performing services for the Western State Psychiatric Institute and Clinic, the University of Pittsburgh or the Commonwealth of Pennsylvania but was primarily engaged in the acquisition of training and experience and the furtherance of his education for his individual benefit.

## Discussion.

Under Section 117.4-(c) of the Income Tax Regulations, whether a payment or allowance to one who is not a candidate for a degree qualifies as a scholarship or fellowship excludable from gross income under Section 117 of the Internal Revenue Code of 1954 depends upon a showing that the primary purpose of the award is to further the education and training of the recipient in his individual capacity as distinguished from an award the primary purpose of which is to serve the interests of the grantor. Once the test of primary purpose is satisfied, the fact that the grantor derives some incidental benefit from the activities of the recipient does not of itself affect the excludability of the amount received from income.

The foregoing Regulation has been applied in a number of informal rulings of the Treasury Department. In Revenue Ruling 57-386 (Mertens, Rulings Volume, p. 839), it was held that stipends allowed interns and residents at a training hospital who assisted in the care of patients as a part of their training represented compensation for services and did not constitute non-taxable fellowship grants. On the facts stated, the interns and residents were said to be primarily performing services for the hospital even though in the process they were acquiring training and experience in their particular specialties. See also Revenue Rulings 57-385 (Mertens, Rulings Volume, p. 838) and 56-101 (Mertens, Rulings Volume, p. 277).

The physicians participating in the training program in psychiatry at the Western State Psychiatric Institute and Clinic are not selected for their abilities to render services as employees but for the purpose of "taking up the great gap between the number of qualified psychiatrists and the number who are needed as a result of the constantly mounting number of persons needing attention for mental disorders." 50 P.S.Pa. § 575.1. The aims and purposes of the legislature of the Commonwealth of Pennsylvania in establishing the Institute differentiate it from the ordinary hospital where interns and residents are accepted for training in the performance of the type of services it is customarily the business of hospitals to furnish.

Patients are admitted to the Institute and other persons receive out-patient treatment for they are the subject matter of a complex medical science, the principles of which it is the function of a psychiatric study and research center to investigate. The essential business of the Institute, however, is not the care and treatment of patients. The presence there of physicians in psychiatric training is not required for treatment of patients but for enabling the Institute to discharge its statutory obligation of developing a core of qualified specialists in the field of psychiatry who at the end of their training may be called upon by members of the general public.

The education and training of those physicians goes beyond observation, but observation is not the only or necessarily the best means of learning. Those in charge of the administration of the Institute and the execution of its func-

tions have determined upon a practical program for the instruction and training of physicians in psychiatry, including supervised exposure of the trainee to a wide variety of case problems in clinical settings, and to problems of communication of complex ideas, administration and hospital service. The defendant contends that pursuit of such a program by a physician at the Institute constitutes him, for tax purposes, an employee engaged in the performance of services. In effect, we are asked to set aside the judgment of qualified teachers in the field of psychiatry as to a proper and effective method of training and instruction. Under the facts presented, we decline to do so.

The Institute has, as the proofs show, an ample employed staff. The services of the plaintiff during the course of the training program may supplement those of employees of the Institute but are of themselves not of primary or material benefit to the Institute within the meaning of § 117.4–(c) of the Income Tax Regulations. The result reached here is, in our view, consistent with other rulings of the Department in which it was held that similar grants despite requirements of practical experience were excludable from income. See Revenue Rulings 57–370, IRB 1957–33 (Mertens, Rulings Volume, p. 819); Revenue Rulings 57–560, IRB 1957–48 (Mertens, Rulings Volume, p. 963); see also an unpublished Revenue Ruling dated November 18, 1955, dealing with taxability of teacher traineeship grants of the National Institute of Public Health.

### Conclusions of Law.

1. This court has jurisdiction of the parties and of the subject matter.

2. The stipend received by the plaintiff from the University of Pittsburgh in 1956 was for the primary purpose of enabling him to pursue a course of study and research in psychiatry in his individual capacity and constitutes a fellowship grant within the meaning of Section 117 of the Internal Revenue Code of 1954.

3. The stipend received by the plaintiff in 1956 is excludable from gross income under Section 117, subject to the limitations of Section 117(b) (2).

4. The plaintiff is entitled to judgment in accordance with the foregoing findings of fact and these conclusions of law.

Entry of an order for final judgment will be deferred pending receipt of a stipulation as to the amount due and a form of decree.