William K. Rundell, Jr. and Shirley A. Rundell v. Commissioner.
Rundell v. Commissioner
Docket No. 2567-70-SC.
United States Tax Court
T.C. Memo 1971-40; 1971 Tax Ct. Memo LEXIS 292; 30 T.C.M. (CCH) 177; T.C.M. (RIA) 71040; March 3, 1971, Filed. G. Lynn Smith, 524 Southland Center, Dallas, Tex., for the petitioners. John W. Dierker, for the respondent. GUSSIS
Memorandum Findings of Fact and Opinion GUSSIS, Commissioner: Respondent determined a deficiency in the petitioner's Federal income tax for the year 1968 in *293 the amount of $836.87. The issue is whether a portion of the amounts received by petitioner William K. Rundell, Jr. in 1968 while a resident at St. Paul Hospital was excludable from income as a fellowship grant within the meaning of section 117 of the Internal Revenue Code of 1954. [1]
Findings of Fact Some of the facts were stipulated and they are so found. William K. and Shirley A. Rundell, Jr., husband and wife, were residents of Dallas, Texas at the time the petition herein was filed. They filed a joint Federal income tax return for 1968 with the district director of internal revenue, Dallas, Texas. William K. Rundell, Jr., hereinafter called the petitioner, was a resident physician specializing in general surgery on the house staff at St. Paul Hospital in Dallas, Texas during the period from July 1 through December 31, 1968. He was licensed to practice medicine in Texas during this period. St. Paul Hospital is an organization exempt from taxation within the meaning of section 501(c)(3). Petitioner graduated from medical school in June 1967 and served *294 his period of internship at St. Paul Hospital prior to joining the house staff as a resident physician. The residency program for surgery in which petitioner participated covers a period of four years. It is not necessary to serve an internship at St. Paul Hospital in order to qualify for the residency program at the hospital. Residents are not obligated to perform future services for St. Paul Hospital after they complete the residency program. 178 Under the agreement executed by petitioner and the hospital covering the first year of the surgical residency, the petitioner obligated himself as resident "to perform faithfully and properly all services ordinarily performed in such character of service and to which he may be assigned from time to time by the authorities of said Hospital." Under the residency program, a resident was assigned to designated physicians. The resident was then assigned to patients by the attending staff physician who at all times had complete responsibility for the care of his patients. In making such assignments, the staff physician was expected to consider the educational value of the patient to the resident physician. As a resident physician the *295 petitioner was supervised by the head of the hospital's department of medical education as well as by other staff physicians. Petitioner was assigned to clinic patients as well as private patients. He was supervised in the clinic by fourth year residents who in turn were supervised by physicians on the hospital staff. Petitioner had extensive duties. He examined an average of 10 patients each day throughout the year. Upon occasion a resident could recommend that a clinic patient, who might otherwise fail to qualify for treatment because of economic reasons, be retained at St. Paul Hospital because of the significant educational value of the case. Petitioner's duties included the preparation of admission cards for private patients assigned to him and, when necessary, he prepared the history of the patients. This information was received by the attending private physician. Petitioner performed similar duties for the clinic patients. Petitioner prescribed medicines in some cases. A resident was expected to handle emergency cases as part of his duties. Residents were given increasing responsibilities with respect to patients during the four-year residency program in surgery. In the fourth *296 year the resident was in charge of all clinic patients in the hospital and out-patient clinics and he was responsible for their diagnosis, surgery, pre- and post-operative management. The department of medical education at St. Paul Hospital was responsible for the hospital's educational program relating to medical students, interns, residents and attending staff physicians. The department was staffed by a director and by three salaried sub-directors for the departments of obstetrics, surgery and medicine. Interest-free loans were made available by the department of medical education to interns and residents. Upon his request a resident would be assigned to night duty in the hospital emergency room and would receive extra compensation for such work. St. Paul Hospital was a general hospital primarily engaged in the care and treatment of patients. In 1968 the hospital admitted a total of 25,645 patients. It had approximately 500 admitting physicians on its hospital staff with about 200 admitting physicians in the department of surgery. In 1968 five out of the approximately 20 residents at the hospital were residents in surgery. In 1970 there were approximately 30 physicians on the *297 teaching staff in the department of surgery. As part of the four year residency training program in surgery, residents spend three months in training at Children's Medical Center because of the infrequency of pediatric surgical problems encountered at St. Paul Hospital and will also spend three months at the Parkland Hospital because of the infrequency of major traumatic injuries treated at St. Paul Hospital. During these training periods, which normally occur in the third year of the surgical program, the residents do not receive any compensation from the Children's Medical Center or the Parkland Hospital. They do, however, receive an additional stipend from St. Paul Hospital for meals while at Children's Medical Center. St. Paul Hospital withheld Federal income tax and social security tax from the amounts paid to petitioner. The payments to petitioner were charged by the hospital to the salary and wages account. In the by-laws of the hospital's medical staff, the term "House Staff" is defined as "interns and residents who are employed by the Hospital." Petitioner received $3,150 from St. Paul Hospital for the period from July 1 to December 31, 1968. He reported total income *298 on his income tax return for 1968 in the amount of $14,864 and excluded from income the amount of $3,600. Respondent disallowed the claimed exclusion from income in full. Opinion Petitioner here contends that the payments received by him during the period from July 1 through December 31, 1968 while he served as a resident physician in 179 surgery at St. Paul Hospital are excludable from income (up to $300 a month) as a fellowship grant under the provisions of section 117. It is respondent's position that the payments made to petitioner were fully taxable as compensation for services. Section 117(a) excludes from gross income any amount received by an individual as a scholarship or fellowship grant. In Elmer L. Reese, Jr., 45 T.C. 407 (1966), affirmed per curiam 373 F. 2d 742 (C.A. 4, 1967), this Court indicated that before the exclusion comes into play there must be a determination that the payment sought to be excluded has the normal characteristics associated with the term fellowship. Section 1.117-4(c), Income Tax Regs., provides that payments made as "compensation for past, present, or future employment services" and payments made to "an individual *299 to enable him to pursue studies or research primaily for the benefit of the grantor" are not to be considered as scholarships or fellowship grants excludable from gross income under section 117(a). In Bingler v. Johnson, 394 U.S. 741 (1969) the Supreme Court, in upholding the validity of these regulations, stated that the thrust of such regulations dealing with compensation "is that bargained-for payments, given as a 'quo' in return for the quid of services render - whether past, present, or future - should not be excludable from income as 'scholarship' funds." This Court has recently considered this same issue in factual situations strikingly similar to that presented here. Irwin S. Anderson, 54 T.C. 1547 (1970); and Aloysius J. Proskey, 51 T.C. 918 (1969). As here, both cases involved resident physicians in hospitals operated primarily for the care and treatment of patients and in both cases the taxpayers performed a wide range of duties in their capacities as residents. In the case before us St. Paul Hospital, with some 500 admitting physicians on its staff, admitted 25,645 patients in 1968. We have indicated in our findings of fact the *300 extensive duties and required services of the petitioner and the other residents in assisting in the care of the hospital patients under the supervision of staff physicians. The duties of residents encompassed clinic patients and emergency cases. The director of the hospital's department of medical education testified that with the residents on the house staff "[the] patients do get better care, because there are people around to take care of some of their needs on an emergency basis when the attending or admitting physician might be across town in his office or in another hospital * * *." The director also testified that with residents (and interns) on the staff there is "a little better control of the patients" and "a little more careful supervision." We think it is quite clear from all of the evidence that petitioner was primarily engaged in providing patient care for the benefit of the hospital. See Irwin S. Anderson, supra. We do not consider it significant that in 1968 St. Paul Hospital had only 20 residents, with five of them in surgery. The essential fact is that they were engaged primarily in caring for patients for the hospital's benefit. Petitioner contends *301 that his principal purpose in participating in the residency program was to further his education in his special field. Petitioner emphasizes, among other things, the availability of staff physicians for consultations, the retention of clinic patients for their educational value, his assignment to patients on the basis of their educational value to him, and the fact that a resident, as part of the four-year program, will spend three months in the Parkland Hospital and three months in the Children's Medical Center in order to obtain broader training. In the Proskey case, where the taxpayer made a similar contention, we said: There can be no serious doubt that work as a resident physician provides highly valuable training, particularly in preparing for specialties in the various fields of medicine. Yet virtually all work as an apprentice, whether in medicine or law, carpentry or masonry, provides valuable training. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession. Whatever training petitioner received during the years of his *302 residency - and we do not deny that it was substantial - was merely 'incidental to and for the purpose of facilitating the raison d'etre of the Hospital, namely, the care of its patients.' Ethel M. Bonn, 34 T.C. 64, 73 (1960); * * *. Petitioner cites Pappas v. United States, 19 A.F.T.R. 2d 1276 (E.D. Ark. 1967) and Wrobleski v. Bingler, 161 F. Supp. 901 (W. D. Pa. 1958) in support of his position. In 180 the Pappas case a jury determined that the payments by the hospital to the taxpayer, who was a resident physician, did not represent compensation for his services but were intended primarily for his training. We are unable to make such a finding here. In the Wrobleski case, the Court found that the Western State Psychiatric Institute and Clinic was an institution for teaching and research while in the present case the St. Paul Hospital was a general hospital primarily engaged in the care and treatment of patients. It was therefore possible for the Court in the Wrobleski case to find that the taxpayer was primarily engaged in a course of study and research which only incidentally provided a minor benefit to the Institute through the taxpayer's *303 care of patients. We think the Wrobleski case is clearly distinguishable. We hold on the basis of the entire record that the stipend received by petitioner during 1968 was not a scholarship or fellowship grant within the meaning of section 117 but was compensation for services rendered, includable in gross income under section 61. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩