Michael D. Birnbaum and Rochelle W. Birnbaum v. Commissioner.
Birnbaum v. Commissioner
Docket No. 6579-70 SC.
United States Tax Court
T.C. Memo 1971-231; 1971 Tax Ct. Memo LEXIS 105; 30 T.C.M. (CCH) 989; T.C.M. (RIA) 71231; September 8, 1971, Filed. Michael D. Birnbaum, pro se, 1700 Butler Pike, Apt. 11-8, Conshohocken, Pa. Alan E. Cobb and Howard W. Gordon, for the respondent. JOHNSTON. Memorandum Findings of Facts and Opinion JOHNSTON, Commissioner: Respondent determined a deficiency in the Federal income tax of the petitioner for the year 1968 in the amount of $339.02. The issue for decision is whether amounts received by petitioner, Michael D. Birnbaum, in the taxable year 1968 constituted a fellowship grant, excludable from gross income under section 117(a)(1)(B) of the Internal Revenue Code. [1]
Findings of Fact Some of the facts are stipulated and are so found. Michael D. Birnbaum (hereinafter referred to as the petitioner) and Rochelle W. Birnbaum, *107 husband and wife, were residents of Conshohocken, Pa., when they filed their petition. In petitioners' joint Federal income tax return for 1968 the amount of $5,492.40 [2] was reported as gross income of which petitioner deducted $1,830.80 in Part III as an employee business expense. This expense represented one-third of the amounts received from the Albert Einstein Medical Center (hereinafter rereferred to either as the Center or the hospital) where petitioner was a resident physician. The petitioner graduated from the State University of New York, Upstate Medical Center, Syracuse, N. Y. in May 1966, and then served one year as an intern from July 1, 1966 through June 30, 1967, at the Albert Einstein Medical Center, Philadelphia, Pa. During the period beginning on July 1, 1967 and continuing through June 30, 1970, petitioner worked as a resident at the Center. He was a participant in a 3-year residency program in obstetrics and gynecology. [3] Before each year of residency petitioner signed a contract. In addition to his monthly stipend, petitioner *108 received various benefits such as a paid vacation, parking privileges for one dollar a year, free laundry service for his uniforms, housing allowance, and a yearly salary increase. During the first half of the taxable year in question, petitioner received a stipend of $325 per month. During the second half of the year, he received a $450 monthly stipend. The Albert Einstein Medical Center, where petitioner worked approximately 60 hours a week, is a nonprofit, community hospital. It contained 781 beds in its Northern Division, and 96 beds in the obstetrics and gynecology (OBGYN) section. There were 40 to 45 staff physicians in private practice in the OBGYN department. These doctors took care of their own patients and were not paid by the Center. In addition, there were from 7 to 10 resident physicians working in the OBGYN section (and usually one intern) who were paid by the Center. Ninety-percent of all admitted patients were private patients and were under the care of their private physicians. The remaining *109 10% of admitted patients were ward-service patients. [4] These patients look upon the residents as their own doctors. As a first-year resident assigned to obstetrics in 1968, petitioner's duties included the following: directing, under supervision, the conduct of labor on all ward-service patients; delivering all ward-service patients with complications and assisting and instructing interns in the conduct of normal labor and delivery; assisting the attending staff in the conduct of labor and with the 990 delivery of all private patients; making daily rounds on all patients with the senior obstetrics resident, or alone if the senior resident was busy; making rounds with an intern (when available), not always daily, to private obstetric patients; preparing interval histories of obstetrical patients, attending the prenatal and postnatal outpatient clinics. Furthermore, the petitioner had certain responsibilities as follows: technical operative responsibility, which meant that he could, under supervision, actively participate in the delivery or operation, but not do all of the procedure; *110 total responsibility for patient care, where, under supervision, he performed the operation or delivery, followed up on recovery, and cared for the patient until released. The petitioner delivered well over 300 private patients from a hospital total of 3,000. Approximately 90% of all patients delivered at the Center were delivered by residents. Nintey-five percent of all deliveries of private patients were supervised, but on the routine, uncomplicated cases, the attending physician might or might not have been present. As a second-year resident at the Center, the petitioner was assigned to the gynecology section and his duties included the following: making examinations of all private gynecological (GYN) patients and checking their histories; acting as first assistant on all private GYN operations; making daily rounds on all private GYN patients and under supervision of the attending physician, managing pre-and post-operative care of these patients; presenting the GYN statistics report at the departmental conferences. Also, the petitioner had total responsibility for patient care of a substantial number of private GYN patients (361 for his entire second year), and had technical operative *111 responsibility for 87 cases for the year. [5]
In addition to the duties described above, petitioner was required to attend certain conferences designed to further the education of the residents. There were general staff conferences every week where the residents and staff discussed the handling of interesting cases. Also, there were specialized conferences on topics such as malignancy or endocrinology that were held every other week. Attendance at these conferences was mandatory and a resident was excused to tend to a patient only if the patient was in a life or death situation. Furthermore, the residents were required to attend a Journal Club meeting each month at the home of one of the attending physicians to discuss in detail interesting cases reported in medical journals pertinent to the residents' field. In addition, each OBGYN resident at the Center was required to keep a log of his work to show to a reviewing committee that he had fulfilled the *112 minimum requirements for qualification as a specialist in OBGYN, as prescribed by the American College of Obstetricians and Gynecologists. The petitioner was not registered as a student in the taxable year 1968, nor was he a candidate for any degree. Also, in applying for the 3-year residency program, petitioner filed an application supplied by the Center that requested such items as grades, the medical school attended, and personal references. The application form did not require information as to the applicant's finances and the Center was not concerned with an applicant's financial needs. Ultimate Facts The primary purpose of the Albert Einstein Medical Center is to provide a place where patients can be cared for by staff physicians and residents. Petitioner rendered substantial service to the Center. Petitioner's services were subject to the direction and supervision of the Center and the amounts paid to the petitioner by the Center were for its benefit. Opinion The issue in this case is whether amounts received by the petitioner in 1968 as a resident physician constituted a fellowship grant, excludable under section 117 or were compensation for services rendered, taxable *113 under section 61. During the taxable year, the petitioner was a resident in obstetrics and gynecology at the Albert Einstein Medical Center in Philadelphia, Pa. The Albert Einstein Medical Center is a non-profit community hospital. Petitioner contends that since his residency program involves educational training as well as service to the hospital that he is entitled to deduct one-third of his total compensation of $5,492.40 which 991 amount he estimates represents a fellowship grant excludable from gross income under section 117(a)(1)(B). The petitioner argues that his services to the hospital were merely incidental to his main purpose of furthering his education. Also, petitioner urges that the residents at the Center do not provide essential services to the carrying out of the primary purpose of the Center. The basis for the petitioner's argument that he only rendered incidental service to the Center is that the vast majority of his time was spent in supervised teaching situations and that what he learned from those situations was of more value to him than to the Center. This is a doubtful proposition, since the more learned and skilled petitioner became in his profession *114 the greater would be the benefits that would flow to the Center in achieving the primary purpose of the Center to furnish skilled medical care for its patients. Petitioner also appears to be arguing that section 117(a)(1)(A) applies to his case. He contends residency is an organized educational program enrolled in voluntarily by a physician to gain knowledge and expertise in area of medicine. Presumably for the purpose of this argument, the hospital, at least with respect to the residency program, is to be considered an educational institution as defined in section 151(e)(4). However, petitioner in his brief lays stress on the fact that a major part of his "education" was the supervision given by the attending physician present while he was performing his duties in caring for private patients. The respondent, on the other hand, maintains that the services rendered by the petitioner were substantial in furthering the primary purpose of the Center. Also, respondent contends that the stipend received was compensation for services rendered, and that the nature of the services indicates an employer-employee relationship. Section 117 concerns itself with the exclusion of fellowship *115 and scholarship grants from gross income, [6] but also sets certain limitations for those individuals who are not candidates for any degree. [7] The applicable regulations section 1.117-4 states in part: Section 1.117-4 Items not considered as * * * fellowship grants. The following payments or allowances shall not be considered to be amounts received as * * * a fellowship grant for the purpose of section 117. * * * (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of sec. 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) * * * amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a * * * fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual *116 capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. (Emphasis supplied.) The Supreme Court in upholding the constitutionality of section 1.117-4 of the Treasury Regulations in Bingler v. Johnson, 394 U.S. 741 (1969), said at 751: *117 "* * * the definitions supplied by the Regulations clearly are prima facie 992 proper, comporting as they do with the ordinary understanding of * * * 'fellowships' as relatively disinterested, 'nostrings' educational grants, with no requirement of any substantial quid pro quo from the recipients." In Aloysius J. Proskey, 51 T.C. 918, the Court found that the taxpayer, a resident in OBGYN at University Hospital, University of Michigan, had received stipends in return for services rendered. The duties and responsibilities of the residents in Proskey were essentially the same as the petitioner's. The Court said of the resident in Proskey at 924-925, that "his principal objective in accepting an appointment as a resident physician * * * was to obtain training in his profession - to have the opportunity to consult with staff physicians on a variety of medical problems". The contention of the taxpayer in Proskey was that the stipend was a fellowship grant because of the training received. This in essence is the petitioner's argument. The Court said in Proskey at 925: * * * virtually all work as an apprentice, whether in medicine or law, carpentry or masonry, provides *118 valuable training. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession. We agree that the petitioner in the present case, like the resident in Proskey, received substantial educational benefits as a resident. However, that is not sufficient to establish his stipend as a fellowship since his training was merely incidental to "the raison d'etre of the Hospital, namely, the care of its patients." Ethel M. Bonn, 34 T.C. 64, 73 (1960). The petitioner urges that his case is distinguishable from Proskey, supra, in that the ratio of staff physicians to residents at the Center is such that the residents do not perform substantial services as they did in the Proskey case. However, we must find against petitioner on this point. [8] We find that the ratio of staff physicians to residents at the Center is not significant because they were engaged primarily in caring for patients. *119 The petitioner maintains that the vast majority of his time at the Center was spent in directly supervised teaching situations which were of no substantial benefit to the hospital and thus the stipend qualifies as a fellowship grant. Although the petitioner received expert supervision and was in a learning situation while a resident at the Center, the fact remains that the hospital's primary purpose was to provide a place where patients could be cared for. The Center was not primarily engaged in teaching or research. The care was provided not by the hospital, but, as petitioner points out, by the staff, residents, and interns serving in the hospital. The service that the residents provided within the OBGYN section must be considered substantial. Without repeating the list of duties and responsibilities enumerated in our Findings of Fact, the mere fact that the petitioner delivered 10 percent of all private patients in 1968 is a clear indication as to the extent of services rendered. The supervision of the petitioner while rendering his services is not unlike the supervision under which other professionals such as lawyers, teachers, or psychiatrists must work. In Tobin v. United States, 323 F. Supp. 239, 241 (1971), *120 the Court said that "the overwhelming number of 'employees' who pay income taxes in the United States are subject to some degree of supervision." We conclude that the services rendered were substantial and that the supervision is not a controlling factor to the determination that the stipend was a fellowship. The stipend paid to petitioner was not based on financial need and respondent contends that this is an indication it was not a fellowship. In Irwin S. Anderson, 54 T.C. 1547 (1970), and Proskey, supra, the taxpayer's stipends were not based on financial needs. In Proskey at 924, the Court said that "The amount of the stipend was not dependent on financial need, as is usually true of fellowship grants, * * * but on the length of service with * * * the hospital." In the present case, it is undisputed that the amount of the stipend was determined by the length of service at the Center, and not by financial needs of the petitioner. We find that 993 these facts support the conclusion that the stipend was not a fellowship. The respondent contends that the nature of the services and the circumstances under which they were rendered are indicia of an employer-employee *121 relationship. We agree. In Proskey, supra; Coggins v. United States, 26 AFTR 2d 70-5775 (N.D. Tex. 1970); and Anderson, supra; the residents had duties and responsibilities strikingly similar to petitioner's in the present case. In each case mentioned above, the stipends paid to the residents were held to be in return for services rendered and were indicia of an employer-employee relationship. The nature of the services performed by petitioner in the case before us is most certainly an indication of such a relationship. In addition to the stipend, petitioner received several benefits such as parking privileges, free laundry services for his uniforms, paid vacations, and housing allowance. These fringe benefits are usually associated with employment and they are at least an indication that such a relationship existed. Aloysius J. Proskey, supra; Woddail v. Commissioner, 321 F. 2d 721 (C.A. 10, 1963); Irwin S. Anderson, supra. Petitioner urges that the purpose of the stipend itself is controlling, not the purpose of the institution granting the stipend. However, the merit of this argument cannot be sustained. *122 It is the institution's primary purpose in granting the stipend that is controlling. Bingler v. Johnson, supra; Aloysius J. Proskey, supra.The primary purpose of the Center in granting the stipend was to pay for services rendered. The petitioner relies upon Pappas v. United States, 19 AFTR 2d 1276 (D.C. Ark. 1967) and Wrobleski v. Bingler, 161 F. Supp. 901 (W.D. Pa. 1958). However, each case is clearly distinguishable from the present case. In Pappas, a jury determined that payments to Dr. Pappas while a resident at the University of Arkansas Medical Center were primarily for the purpose of furthering his education and training in his individual capacity. The jury also determined that the payments did not represent compensation or payment for his services. The evidence presented in the present case by petitioner precludes any such finding. In Wrobleski, supra, the taxpayer was a resident psychiatrist at the Western State Psychiatric Institute and Clinic. The District Court mentioned the fact that the Institute was unlike ordinary hospitals where residents are accepted for training. Also, the primary purpose of the *123 Institute, unlike that of the Center, was for teaching and research and not for providing patient care. So the resident in Wrobleski was primarily engaged in a course of study which only incidentally provided a minor benefit to the Institute. The petitioner herein was working in a hospital that was not primarily engaged in research or teaching. Furthermore, his services were not merely incidental to the hospital since without residents, the attending staff would have to assume all the residents' duties and responsibilities. Considering that petitioner worked 60 hours per week at the Center, an assumption of his duties alone would entail substantial increase in the amount of time the attending staff would have to spend working at the Center. Finally, the petitioner argues in his brief that in order to take full advantage of the law, he should have deducted the entire $3,600 allowed under section 117(b)(2)(B). The petitioner stated that he did not exclude the entire stipend because only onethird of his time was spent in educational pursuits, and therefore one-third of his stipend should be excluded. In other words, the petitioner seeks the maximum portion of the stipend that would *124 represent his time spent in training. We must find against petitioner and follow Woddail v. Commissioner, supra.In Woddail, the taxpayer asserted that the portion of the residency stipend paid to him that represented time spent receiving instruction and training should be excluded under section 117. The Court of Appeals said at 725: The Tax Court completely answered this proposition by stating that "What the petitioner fails to realize is that until the existence of a * * * fellowship grant has been established, no allocation is possible. Since we think there is no ground for concluding that a * * * fellowship grant was made * * * to the petitioner, we find that no allocation is justified." Here as in Woddail no portion of the stipend is excludable since we are of the opinion that petitioner has failed to establish the existence of a fellowship grant. We find that the amounts received by the petitioner from the Center were compensation for services rendered. We conclude that the stipends do not constitute a fellowship grant excludable under section 117 and 994 therefore must be included as gross income under section 61. Frederick Fisher, 56 T.C. -, No. 92 (August 30, 1971). *125 Petitioner, in his brief, requested reconsideration of the denial of his original request that his case be heard under section 7463. However, section 7463(a)(2) and Rule 36(c)(5) of the Tax Court Rules of Practice preclude such reconsideration. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. All statutory section references are to the Internal Revenue Code of 1954, as amended.↩
2. Federal income tax in the amount of $490.50 was withheld from this amount as shown by Form W-2 attached to petitioners' return.↩
3. Following completion of the residency program in June 1970, the petitioner became the recipient of a 1-year fellowship in Gynecologic Endocrinology at the Center.↩
4. These patients are also referred to as clinic patients or teaching-service patients.↩
5. We are only concerned with the first half of the second year and the number of cases handled in the first half were probably less than the second half, although no divisible figure was presented by petitioner at the hearing.↩
6. Section 117 provides in part: (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received. - * * * (B) as a fellowship grant, including the value of contributed services and accommodations; (b) Limitations. - * * * ↩
7. (2) * * * In the case of an individual who is not a candidate for a degree at an educational institution (as defined in section 151(e) (4)), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B). (A) Conditions for Exclusion. - The grantor of the scholarship or fellowship grant is - (1) an organization described in section 501 (c)(3) which is exempt from tax under section 501(a), * * * (B) Extent of Exclusion. - The amount of the * * * fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the * * * fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months * * * amounts received as a * * * fellowship grant while not a candidate for a degree at an educational institution.↩
8. In William K. Rundell, T.C. Memo. 1971-40, the taxpayer was a resident in surgery at St. Paul Hospital in Dallas, Tex. There were 200 staff physicians in the department of surgery and only 5 residents. Each resident was assigned to patients by a staff physician who had the complete responsibility for the patient. The Court said: We do not consider it significant that in 1968 St. Paul Hospital had only * * * five [residents] in surgery. The essential fact is that they were engaged primarily in caring for patients for [the hospital's] benefit.↩