THOMAS P. PHILLIPS AND KATHLEEN S. PHILLIPS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7621–70SC.    Filed December 21, 1971.

Thomas P. Phillips and Kathleen S. Phillips, pro se.
*James L. Norris*, for the respondent.

---

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioners' income tax for 1968 in the amount of $417.25. The only issue presented for decision is whether sums received by petitioner Kathleen S. Phillips during 1968 under the Dietetic Internship Program sponsored by Pennsylvania State University constituted a scholarship or fellowship grant within the meaning of section 117.[1]

### FINDINGS OF FACT

At the time their petition was filed, petitioners were legal residents of Menomonie, Wisc. They filed their joint income tax return for 1968 with the district director of internal revenue, Pittsburgh, Pa.

Petitioner Kathleen S. Phillips (hereinafter referred to as Kathleen) was graduated from the University of Dayton with a bachelor of science degree, her major being in the field of home economics, foods, and nutrition. During the course of her study, she learned of the Dietetic Internship Program sponsored by Pennsylvania State University, and she filed her application for an internship under the program with a view to continuing her education in the field of human nutrition. She conceived of the internship as an avenue for obtaining membership in the American Dietetic Association (hereinafter ADA), a professional organization of dietitians. Kathleen believed that membership in this organization would help advance her career as a dietitian. The only other way that she could become eligible for membership in the ADA was to obtain a master's degree from an accredited university.

Eligibility for the Dietetic Internship Program is based upon scholastic ability, and selections for internships are made on the basis of an evaluation of the candidate as a future professional dietitian. A degree in home economics is also required in order to be eligible to participate in the program. Within Pennsylvania State University, the internship program is under the direction and coordination of the Institution Food and Research Services Program. Administratively, the program is a part of the College of Human Development.

The money used to pay the stipends of dietetic interns is derived from the general fund of the Commonwealth of Pennsylvania. The Department of Health, Education and Public Instruction of the Commonwealth, by contract, agreed with the university to furnish the funds distributed in the internship program. In Kathleen's case, she was paid a stipend out of funds allocated to the Eastern Pennsylvania Psychiatric Institute, Philadelphia, Pa., which is under the administrative direction of the Department of Health, Education and Pub-

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.

lic Instruction. The stipend is designed to cover lodging, meals, travel from one institution to another, and other expenses incurred by the participant.

The dietetic intern does not perform or render any specific services to the university, the State, or any of the State institutions. The intern is not located at one institution for any substantial period but moves from one institution to another, spending periods ranging from 2 to 7 weeks at each separate institution. In the university's brochure explaining the Internship Program it is stated that the objective of these assignments is to "enable interns to obtain a broad perspective and to compare, analyze, and evaluate widely diversified food service systems." Near the end of each assignment, the intern meets with the dietitian-in-charge or another supervisor at the institution and reviews the techniques and procedures which she has observed. Upon completion of each tour of study at an institution, the participant returns to the university for classroom work and a new assignment. An intern may earn up to 10 credit hours toward an advanced degree.

An individual who has completed an internship is eligible for employment under the Pennsylvania Civil Service system. However, candidates for the internship are not required to agree upon completion of the program to accept a position with the Commonwealth, and Kathleen did not commit herself to do so. The university awarded six of these internships for the period July 1, 1967, through June 30, 1968, including the one which was given to Kathleen.

Kathleen began her studies under the internship on or about July 1, 1967, with a period of orientation at Pennsylvania State University. She then spent successive periods of study at Philipsburg State General Hospital, The State Hospital for Crippled Children, The Eastern Pennsylvania Psychiatric Institute, and Hollidaysburg State Hospital. At these institutions Kathleen received guidance, instruction, and assignments from the dietitian-in-charge. She studied the food needs and the procedures required for the preparation and serving of food for the various types of institutionalized patients, e.g., crippled children, mentally ill, and individuals suffering from specific diseases. She prepared suggested menus and estimated the costs of various items. She studied the architectural layouts, the management, the supervision, and the operation of the institutional kitchens, and the use of specialized equipment therein. She prepared demonstration menu items and consulted with cooks, bakers, meatcutters, and other food service personnel. She also spent a period of time at the Nittany Lion Inn, a restaurant and motel located on the university campus, where she made similar studies as they related to a commercial operation.

The supervising dietitian at each institution checked all her assignments; if they were not done satisfactorily, Kathleen was required to redo them. At none of these institutions did she assume routine duties or otherwise perform services as an employee. Her assignments were limited to preparing sample solutions to menu and related problems presented to her by the supervisory personnel.

In addition, Kathleen spent several weeks of study and instruction at offices of the Commonwealth's Departments of Health, Public Welfare, Property and Science, and Agriculture. At these offices she studied additional nutrition problems, including the problems involved in assisting welfare recipients in meeting their food needs and those of their families on limited budgets. As an example, the brochure describing the Internship Program contains the following description of the instruction received at the Department of Health, Division of Nutrition:

> They [the interns] have a one-day orientation with the director of the Department's Division of Nutrition and also spend a day with the assistant director, reviewing materials developed for professional use, and two days with the Nutrition Consultant for Hospitals and Child Caring Institutions, during which they visit a nursing home.
>
> Interns spend one day visiting homes with a public health nurse, another accompanying a social case worker, and three days in field observation with a regional nutritionist. Opportunity is offered to observe staff meetings of the Division of Nutrition, visit clinics or well baby conferences, attend staff meetings with public health nurses or other professional workers, and sit in on case conferences with other professional staff members.

Instruction, similar in principle, was received during the periods spent with other department offices.

Kathleen spent 40 hours per week at each of the institutions and departments during her internship. At most of the institutions, her hours of study were the same as those of the supervisory personnel. However, there were occasions when she would arrive early in the morning when, for example, she was observing the bakery activities, and she might remain late at night if there were particular food service procedures in which she was interested. During her stay at the various institutions, weekly reports were prepared and submitted to the director of the university's Internship Program setting forth an evaluation of Kathleen's activities and progress.

Upon the completion of each assignment at an institution, she returned to the university for a period of classroom work. At the end of Kathleen's internship, she was awarded membership in the ADA.

Prior to her period of study with the university, Kathleen had never been employed by the Commonwealth of Pennsylvania or any of its departments or institutions. Nor was she required to perform any

services for the Commonwealth of Pennsylvania or any of its institutions during or subsequent to her internship. Finally, she neither committed herself in any way to accept, nor did she accept, employment upon completing the year of study provided by the internship.

During 1968, Kathleen received a stipend in the total amount of $3,158.80, and in their joint income tax return for that year she excluded $1,800 (i.e, $300 per month) from her gross income. From her stipend Federal withholding, FICA taxes, and State civil service deductions were withheld. She was entitled to a vacation of 2 weeks, and was given longevity credit under the State civil service program.

In his notice of deficiency, respondent determined that the amounts received and claimed by Kathleen as a stipend from the internship were not excludable from gross income as scholarship or fellowship grants under section 117.

### OPINION

Section 117(a)(1)[2] excludes from an individual's gross income amounts received as "a scholarship at an educational institution" or as "a fellowship grant." Neither the term "scholarship" nor the term "fellowship grant" is defined by the statute, but the regulations have defined the terms and laid down rather extensive guidelines for the application of the section.

Section 1.117-3(a) of the Income Tax Regulations defines the term "scholarship" generally to mean "an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies." Section 1.117-3(c) of the same regulations defines a "fellowship grant" generally to mean "an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research."

These general definitions are qualified by other provisions of the regulations. Pertaining to the present controversy, section 1.117-4(c) of the regulations provides that payments or allowances shall not be considered to be amounts received as a scholarship or fellowship grant "if such amount represents either compensation for past, present, or future employment services." However, that regulation further provides that amounts paid or allowed to an individual "to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant" for the purposes of section 117 "if the primary purpose of the studies or research is to further the educa-

---

[2] SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.

    (a) GENERAL RULE.—In the case of an individual, gross income does not include—

        (1) any amount received—

            (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or

            (B) as a fellowship grant,

tion and training of the recipient in his individual capacity" and the amount provided by the grantor does not represent compensation for past, present, or future services.

Thus, under these regulations, to qualify for the exclusion it must be shown that "the primary purpose of the payment[s] * * * [is] to further the education and training of the recipient rather than to compensate the recipient for services rendered or to be rendered which directly benefit the payor." *Elmer L. Reese, Jr.*, 45 T.C. 407, 411 (1966), affirmed per curiam 373 F.2d 742 (C.A. 4, 1967). In other words, in order to fall within the exclusion provided by section 117, the payments must be "disinterested, 'no-strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients." *Bingler* v. *Johnson*, 394 U.S. 741, 751 (1969). In each case, determination of the primary purpose of the payments must necessarily "turn upon its own particular facts and circumstances." *Stephen L. Zolnay*, 49 T.C. 389, 395 (1968); *Irwin S. Anderson*, 54 T.C. 1547, 1550 (1970).

Respondent contends that the stipends received by Kathleen were compensation for services rendered, or to be rendered, or were otherwise paid to her primarily for the benefit of the Commonwealth of Pennsylvania. Petitioners argue that the payments were made primarily for the purpose of advancing Kathleen's training and education and were not compensation for services. These contentions of the parties frame the issue to be resolved.[3] We hold for petitioners.

The Dietetic Internship Program was designed to provide qualified individuals an opportunity to study the food and nutrition services of various types of institutions. Kathleen's program of study was divided into segments varying in length from approximately 2 weeks to 7 weeks. During each segment, she was located at a different institution or State government department. As noted in our Findings, she spent most of her time either observing the activities of the supervising dietitian, or working on some assigned project or problem related to the activities of that institution. At none of the facilities did Kathleen replace an employee or assume duties normally performed by an employee; nor did she perform any services directly

[3] Since Kathleen was not a candidate for a degree, the limitations of sec. 117(b)(2) are applicable. Under that section, the grantor must meet specified qualifications; the Commonwealth of Pennsylvania, the payor in the instant case, meets those requirements. Sec. 117(b)(2)(A). The amount of the exclusion may not exceed "an amount equal to $300 times the number of months for which the recipient" received grant payments during the taxable year, and no exclusion is allowable after the recipient has received excludable payments for a period of 36 months. Sec. 117(b)(2)(B); sec. 1.117–2(b)(2)(ii), Income Tax Regs.; *Aloysius J. Proskey*, 51 T.C. 918, 926 (1969). Kathleen claims an exclusion of only $300 per month for the 6 months in the taxable year during which she received the disputed payments. Although respondent's answer alleges that Kathleen has not established that she did not receive similar payments for a period in excess of 36 months, the evidence presented at the trial makes that showing, and respondent does not contend otherwise.

beneficial to either the university or the institution where she was located. She merely studied and observed the practical operations of the food preparation and supply system at each institution.

Furthermore, the nature of Kathleen's assignments to the various institutions virtually precluded her performing any valuable current services for the university or for any of the institutions. All the dietetic interns, including Kathleen, were moved from one institution to another, and they did not stay long enough at any institution to permit them to assume any significant duties. This factor alone suggests that the interns were being paid stipends for educational purposes rather than for services which they performed. Indeed the declared objectives of those institutional assignments was to enable the interns to "obtain a broad perspective and to compare, analyze, and evaluate" the different food service systems.

Respondent's reliance upon *Aloysius J. Proskey*, 51 T.C. 918 (1969), and *Woddail* v. *Commissioner*, 321 F.2d 721 (C.A. 10, 1963), affirming a Memorandum Opinion of this Court, is misplaced. In those cases, medical interns performed significant services, and the hospital or other similar institution would have been required to employ other qualified individuals to perform needed services if they had not been performed by the medical interns whose payments were in issue. Notwithstanding the valuable training obtained by the interns in performing those services, this Court held that the primary purpose of the hospital in making the payments was to obtain those services rather than to further the education or training of the recipients. In the instant case, the dietetic interns performed no substantial services in return for the stipends, and the primary purpose of the internship program was to offer to the participants "a structured program of practical learning experiences which contribute to their educational preparation for a career in dietetics."

Nor did the stipends received by Kathleen constitute compensation for "future employment services" within the meaning of section 1.117–4(c)(1) of the regulations. As stated in our Findings, Kathleen's internship was in no way dependent upon her acceptance of employment with any of the agencies of the Commonwealth of Pennsylvania; and she did not commit herself to acceptance of such employment. Consequently, the payments were not compensation for future services. We recognize that there need not be a "contractual undertaking" to accept employment and that a "clear expectation" that the recipient will do so may be sufficient to disqualify the payments for treatment as a scholarship or fellowship grant. *John E. MacDonald, Jr.*, 52 T.C. 386, 393 (1969). However, petitioner testified that she was never interested in employment with any of the Pennsylvania institutions; if

she had been, she could have applied for a position, but the decision as to whether she would be employed would have rested with the Commonwealth. As a result of her training, Kathleen became a member of a group of qualified dietitians who could seek employment wherever it might be found. Cf. *Wrobleski* v. *Bingler*, 161 F.Supp. 901 (W.D.Pa. 1958).

Respondent stresses the administrative handling of the internship program, including its relationship to the civil service system, the sick leave and medical benefits, vacation time, the required 40-hour week, and the withholding of income taxes from the stipends. While these are factors to be taken into account insofar as they throw light on the character of the stipends, we do not think they are dispositive of the issue as to the nature of the stipends. Under the regulations, the issue turns on the primary purpose of the stipend rather than the mechanics by which it is paid. The Commonwealth of Pennsylvania had to provide some method of distributing the funds to the interns, and these factors merely reflect the chosen method of administration. See *Robert Henry Steiman*, 56 T.C. 1350 (1971), acq. 1971–2 C.B. 3; *Chander P. Bhalla*, 35 T.C. 13, 17–18 (1960). They are largely offset by advice given to the interns by the director of the program to the effect that the "educational stipend" paid under the program is subject to exclusion from gross income up to "$300.00 times the number of months under the grant during the tax year." [4]

In light of all the evidence presented, we conclude that the stipends paid Kathleen under the Dietetic Internship Program during the year in controversy had the "normal characteristics associated with the term 'scholarship'" or fellowship, *Elmer L. Reese*, *supra* at 413, rather than those associated with "compensation * * * given only as a '*quo*' in return for the *quid* of services rendered." *Bingler* v. *Johnson*, *supra* at 757.

To reflect our Findings,

*Decision will be entered for the petitioners.*

---

[4] At least some of the administrative factors on which respondent relies are illusory For example, the "Affiliation Assignments for Dietetic Interns" discloses that the so-called "annual leave" is scheduled for all interns from Dec. 25 to Jan. 5—a period which coincides roughly with the Christmas holiday period for all university students. The "medical service" is only on an "emergency basis," and the "sick leave" merely places a limitation on the period for which absences on account of illness may be excused.