**Robert LOGAN, Jr., and Barbara D. Logan, Plaintiffs-Appellees,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

**No. 74–1322.**

United States Court of Appeals, Sixth Circuit.

June 9, 1975.

Fredrick M. Coleman, U. S. Atty., Frank A. Justen, Toledo, Ohio, Scott P. Crampton, Asst. Atty. Gen., Meyer Roth-wacks, Tax Div., Dept. of Justice, Washington, D.C., Michael Paup, George G. Wolf, Meade Whitaker, Chief Counsel, I.R.S., Washington, D.C., for defendant-appellant.

Robert L. Logan, Jr., pro se.

Before EDWARDS and MILLER, Circuit Judges, and McALLISTER, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal by the government from a judgment awarding taxpayers, Barbara D. Logan and husband Robert L. Logan, Jr., a refund of $814.71, plus interest, on income taxes paid for the calendar year 1969. The sole issue for decision is whether the amount received by Mrs. Logan from the University of Toledo in the taxable year 1969 for a "graduate assistantship" is excludable from taxpayers' gross income under Section 117 of the Internal Revenue Code.

Throughout the calendar year 1969 Mrs. Logan was enrolled as a full-time graduate student in the English Department at the University of Toledo. From January through August of that year she was a candidate for the degree of Master of Arts and from September through December she was a candidate for the degree of Doctor of Philosophy.

The University of Toledo hired a number of graduate students as graduate assistants to teach certain courses. These graduate assistants were required to teach one course per quarter. They were not selected on the basis of finan-cial need but were compensated according to their seniority in the graduate program and at a rate determined on the basis of competition with other local universities.

Mrs. Logan served as a graduate assistant for the taxable year 1969, teaching one course per quarter and receiving $2,638.59, from which the university withheld federal income taxes on the assumption that she was an employee of the State of Ohio.

At the time of Mrs. Logan's candidacy for the master's degree, candidates for that degree were not required to teach courses as a condition for obtaining the degree. Candidates for the Ph.D. degree, on the other hand, were required to teach college courses in conjunction with certain required instructional seminars, a requirement which could be waived in the case of candidates who had had prior college teaching experience. During 1969, Mrs. Logan was not enrolled in any of the instructional seminars requiring teaching. The record does not reveal the amount of teaching experience necessary to obtain a waiver of such instructional seminars, nor is there any indication that the reason Mrs. Logan was not enrolled in an instructional seminar was that a waiver had been obtained.

On their 1969 joint federal income tax return, Mrs. Logan and her husband excluded from their gross income the $2,638.59 received from the University of Toledo for her graduate assistantship. It is claimed that this amount was excludable under Section 117 of the Internal Revenue Code of 1954 as a scholarship or fellowship grant. The Internal Revenue Service audited the return and determined that the amount received was not excludable. A deficiency was assessed and duly paid by the taxpayers. A timely claim for refund was filed and denied. The present action was then instituted in the district court resulting in summary judgment in favor of the taxpayers.

Section 117(a)[1] of the Internal Revenue Code of 1954 provides for an exclusion from taxable income of "a scholarship at an educational institution" or for a fellowship grant. The terms "scholarship" and "fellowship grant" are not defined in the statute and it is therefore necessary to look to the case law for interpretation of the terms.

The courts have followed the guidelines set forth in the applicable regulations promulgated by the Internal Revenue Service in deriving the meaning of these terms.[2] Thus, the Supreme Court

---

1. 26 U.S.C. § 117(a) provides, in pertinent part:

§ 117. *Scholarships and fellowship grants*
(a) *General rule.*—In the case of an individual, gross income does not include—
(1)any amount received—
(A) as a scholarship at an educational institution (as defined in section 151(e)(4), or
(B) as a fellowship grant,
including the value of contributed services and accommodations;

\*   \*   \*   \*   \*   \*

2. The revenue regulations provide, in pertinent part:

§ 1.117–2 *Limitations.*
(a) *Individuals who are candidates for degrees*—(1) *In general.* Under the limitations provided by section 117(b)(1) in the case of an individual who is a candidate for a degree at an educational institution, the exclusion from gross income shall not apply (except as otherwise provided in subparagraph (2) of this paragraph) to that portion of any amount received as payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or fellowship grant. Payments for such part-time employment shall be included in the gross income of the recipient in an amount determined by reference to the rate of compensation ordinarily paid for similar services performed by an individual who is not the recipient of a scholarship or a fellowship grant. A typical example of employment under this subparagraph is the case of an individual who is required, as a condition to receiving the scholarship or the fellowship grant, to perform part-time teaching services. A requirement that the individual shall furnish periodic reports to the grantor of the scholarship or the fellowship grant for the purpose of keeping the grantor informed as to the general progress of the individual shall not be deemed to constitute the performance of services in the nature of part-time employment.
(2) *Exception.* If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving the degree, such teaching, research, or other services on the part of the recipient of a scholarship or fellowship grant who is a candidate for such degree shall not be regarded as part-time employment within the meaning of this paragraph. Thus, if all candidates for a particular education degree are required, as part of their regular course of study or curriculum, to perform part-time practice teaching services, such services are not to be regarded as part-time employment within the meaning of this paragraph.
§ 1.117–3 Definitions.

(a) *Scholarship.* A scholarship generally means an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to a student to aid him in pursuing his studies. The term also includes any amount received in the nature of a family allowance as a part of a scholarship. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in pursuing his studies where the grantor is motivated by family or philanthropic considerations. If an educational institution maintains or participates in a plan whereby the tuition of a child of a faculty member of such institution is remitted by any other participating educational institution attended by such child, the amount of the tuition so remitted shall be considered to be an amount received as a scholarship.

\*   \*   \*   \*   \*   \*

(c) *Fellowship grant.* A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to an individual to aid him in the pursuit of study or research. The term also includes any amount received in the nature of a family allowance as a part of a fellowship grant. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in the pursuit of study or research

in *Bingler* v. *Johnson,* 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), relied upon and upheld Reg. § 1.117–4(c), which excepts from the definition of scholarship or fellowship grant any amount paid as compensation for services or primarily for the benefit of the grantor. In formulating its interpretation of Section 117(a), the Court thus stated:

> The thrust of [Reg. § 1.117–4(c)] is that bargained-for payments, given only as a *"quo"* in return for the *quid* of services rendered—whether past, present, or future—should not be excludable from income as "scholarship" funds. That provision clearly covers this case. 394 U.S. at 757–58, 89 S.Ct. at 1448–49. [Footnote omitted]

■ This court in interpreting these regulations has expressed the belief that "consideration of the facts as indicia of compensation for services is a more meaningful test than that of whether the stipend was primarily for the benefit of the grantors." *Stewart* v. *United States,* 363 F.2d 355, 357 (6th Cir. 1966). This preference is consistent with the statement of the Supreme Court in *Bingler* that the "primary benefit" test is "merely an adjunct to the initial 'compensation' provision" of the regulation. 394 U.S. at 758, n. 32, 89 S.Ct. at 1449, n. 32.

> where the grantor is motivated by family or philanthropic considerations.
>
> \*　\*　\*　\*　\*　\*
>
> § 1.117–4 *Items not considered as scholarships or fellowship grants.*
> The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:
>
> \*　\*　\*　\*　\*　\*
>
> (c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.
> (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pur-

■ It is evident, however, under either formulation of the test, that the payments made here to the student-taxpayer were payments for services rendered for the primary benefit of the university. Affidavits filed in connection with motions for summary judgment showed that the school required a service in return for its payments, that approximately 1300 of the university's undergraduate students were taught English courses by graduate assistants each year, and that graduate assistants were paid approximately the same amount as other part-time teachers. Other evidence established that graduate assistants were added to fill the gap when other personnel resigned, that budget requests indicate that graduate students were hired to meet increased teaching requirements resulting from expanded undergraduate enrollment, and that salaries for graduate assistants were determined on the basis of competition with other local universities.

Any employment relationship is, of course, theoretically for the benefit of both the employer and employee. It would, therefore, be possible in this case to demonstrate a substantial benefit conferred upon the university's graduate assistants. This does not alter the fact, however, that payments made to such

> sue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.

teachers constitute compensation for teaching services and, as such, are not excludable under Section 117(a). The mere conclusory statement by the Chairman of the English Department of the University of Toledo that the primary function of the Graduate Assistants program was to provide the financial means for such students to pay for their education is insufficient to compel the opposite conclusion since it appears without dispute that financial need was never a factor considered by the university in appointing graduate assistants. Payments under virtually identical programs have been found by numerous courts not to be excludable. *See, e. g., Worthington v. Commissioner*, 476 F.2d 589 (10th Cir. 1973); *Steinmetz v. United States*, 343 F.Supp. 384 (N.D.Cal.1972); *Reese v. Commissioner*, 45 T.C. 407 (1966), *aff'd per curiam*, 373 F.2d 742 (4th Cir. 1967).

▮ Although a finding that the payments to the student-taxpayer did not constitute a scholarship or fellowship grant within the meaning of Section 117(a) is sufficient to disallow the exclusion, it is clear that the taxpayers' claim also fails for another reason.[3] Assuming *arguendo* that the amounts received would otherwise qualify as a scholarship or fellowship grant under Section 117(a), it is evident to us that the payments would fall within the limitation of Section 117(b)(1).[4] This limitation disallows the scholarship exclusion for payments

for teaching or other services in the nature of part-time employment required as a condition to receiving a scholarship. Taxpayers argue that this case comes within the exception to the limitation found in the last paragraph of Section 117(b)(1). Under this exception, the scholarship exclusion is still allowed for payments for such teaching or other services if required of all candidates for a particular degree. It is apparent from the record that payments to Mrs. Logan fall squarely within the limitation of Section 117(b)(1) and not within the narrow exception to that limitation. The evidence is undisputed that the student-taxpayer was paid for teaching which was not required of all candidates for the degrees for which she was a candidate.

While the district court found that "[a]ll those involved in the master's or doctoral program are required to teach", there is no basis in the record to sustain such finding. At the time Mrs. Logan was a master's candidate, teaching was not a requirement for that degree. Doctoral candidates were required to teach only in conjunction with certain instructional seminars in which Mrs. Logan was not enrolled. While it is true that a few doctoral candidates had had this requirement waived by reason of prior college teaching experience, there was no showing that the teaching performed by Mrs. Logan was the equivalent of the re-

---

**3.** It is well settled that for a taxpayer to prevail in claiming an exclusion under Section 117 it must first be shown that the amount received was a scholarship or fellowship grant under Section 117(a). This requirement must be met even though the teaching or service for which payment was received was required of all candidates for a degree and thus comes within the exception to the limitation of Section 117(b)(1). *See, e. g., Reese v. Commissioner*, 45 T.C. 407 (1966), *aff'd per curiam*, 373 F.2d 742 (4th Cir. 1967); *Steiman v. Commissioner*, 56 T.C. 1350 (1971); *Steinmetz v. United States*, 343 F.Supp. 384 (N.D.Cal.1972).

**4.** 26 U.S.C. § 117(b)(1) provides as follows:
   (b) *Limitations.*—
   (1) Individuals who are candidates for degrees.—In the case of an individual who is a

candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

quired teaching of the candidates taking the required seminars or that she was able to obtain a waiver of those seminars on the basis of her teaching as a graduate assistant. The exception to the Section 117(b)(1) limitation applies only to "*such* teaching . . . required of all candidates." The fact that *some* teaching is required of all candidates is not a sufficient reason for excluding payments for teaching in excess of the *minimum* required for a degree.

Since taxpayers offered no evidence to rebut the government's showing that the payments received were for teaching in the nature of part-time employment and that such teaching was not a condition to receiving either the master's or doctoral degree, the government was entitled to prevail on its motion for summary judgment.

The judgment of the district court is therefore reversed and the action is remanded for entry of summary judgment in favor of the government.

McALLISTER, Senior Circuit Judge (dissenting).

Barbara Logan was a full-time graduate student and a candidate for the degree of Doctor of Philosophy in English, at the University of Toledo during the calendar year of 1969. From January through August of that year, she was a full-time graduate student and candidate for the degree of Master of Arts. From September through December, she was a full-time graduate student and candidate for the degree of Doctor of Philosophy in the Department of English.

As a candidate for the degree of Doctor of Philosophy, she was required to engage in a specified program of classroom teaching, which was required of all such degree candidates as a condition precedent to receipt of the degree. This teaching experience was an integral part of the Doctor of Philosophy program to train college-level teachers. According to appellant's brief, all graduate students who teach are paid. The primary function of this program is to provide a financial means whereby graduate students may meet the expenses of their education and thus pursue their studies, and is not to replace regular faculty members as instructors, according to the appellant's evidence of Dr. William N. Free, Chairman of the Department of English Language and Literature.

The evidence shows that Barbara Logan was solicited by the University to be a teaching assistant in her Master's program. According to appellant's evidence, the University offered teaching assistantships "to attract quality people to our doctorate program. Applicants selected for a teaching assistantship are chosen on their merits as scholars, and their potential for developing into college teachers." According to appellant's evidence, Dr. Michael Mannheim, who came to the University in 1960, stated in his affidavit, relied upon by the Government: "Teaching assistants are selected for the assistantship program based on their scholastic ability."

All candidates for a Ph.D. degree were required to teach, but only in conjunction with the instructional seminars in composition, literature, and language and linguistics. All Ph.D. candidates were required to take the composition and one of the instructional seminars *"unless that requirement has been waived as a result of the graduate student's prior college teaching experience."* Barbara Logan had prior college teaching experience all during the time she was working toward her Master's degree in the University. *If the requirement of the instructional seminars had not been waived, in her case, she would not have been permitted to teach as an assistant in pursuing her work for the degree of Ph.D., or allowed to follow the course for a Ph.D.*

"Waived" in this context means "excused from." Webster's New International Dictionary. It does not mean the relinquishment of a known legal right, or benefit, or advantage by the University. As stated in 92 C.J.S. Waiver p. 1041:

"It has been said that 'waiver' is a troublesome term in the law. * * *

[S]ince it may be used in many senses, it is often of equivocal significance. While the term has various meanings dependent upon the context, it is, nevertheless, capable of taking on a very definite meaning from the context in which it appears, and each case must be decided on the facts peculiar to it."

Barbara Logan was excused from teaching in the instructional seminars not only for the reasons she had prior college teaching experience and had been selected as a teaching assistant in her work toward a Master's degree and Ph.D. but, *according to appellant's own evidence,* she was regarded as a quality teacher and so selected on her merits as a scholar, having the potential of developing into a faculty member. The University was certainly not relinquishing a known legal right or advantage to itself, or disadvantaging itself for the benefit of Barbara Logan, in authorizing her to pursue studies toward the Ph.D. on the justifiable basis that she had prior college teaching experience.

Dr. David R. Cheney, Director of Graduate Studies, Department of English, was especially specific about this particular matter in his affidavit relied upon by the Government. His evidence was that:

> "Graduate assistants working on their Master's degree receive $2,500 per school year. Graduate assistants working on their Ph.D. degree receive $3,000 the first year, $3,500 the second year, and $4,000 the third year. These payments are made only to graduate students who teach."

This contradicts and disposes of appellant's contention that financial aid was never a factor considered by the University in appointing graduate assistants.

After Barbara Logan had engaged in such teaching, as a candidate for a Ph.D. degree, for the year 1969, she received payments from the University of Toledo aggregating $2,638.59 for the teaching of one course per quarter during the taxable year. She filed a joint return with her husband, claiming such amount as exempt from taxation. However, the Internal Revenue Service issued a deficiency assessment for this amount, which was paid, and afterward Barbara Logan and her husband filed an action for refund, and also filed a motion in the District Court for summary judgment, which the court granted and from which the Government appeals.

The issue in the case is whether the amount of money Barbara Logan received for her teaching at the University of Toledo in 1969 was excludable from gross income under the provisions of Section 117, 1954 Code. The parties stipulated that the issue for decision was whether the stipend received by Barbara Logan for a graduate assistantship is excludable from gross income.

Section 117 provides as follows:

"(a) *General rule.*—In the case of an individual, gross income does not include—

(1) any amount received—

(A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or

(B) as a fellowship grant, including the value of contributed services and accommodations; and

(2) any amount received to cover expenses for—

(A) travel,
(B) research,
(C) clerical help, or
(D) equipment,

which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.

(b) *Limitations.*—

(1) *Individuals who are candidates for degrees.*—In the case of an individual who *is a candidate for a degree* at an educational institution (as defined in section 151(e)(4)), subsection (a) *shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving*

*the scholarship or the fellowship grant.* If teaching, research, or other services are required of all candidates ( * * * ) for a particular degree as a condition to receiving such degree, such teaching, research, or other services *shall not be regarded as part-time employment within the meaning of this paragraph.*" (Emphasis supplied.)

In the court's opinion, it was stated: "It should be obvious that any scholarship requiring the recipient to perform certain tasks works to the mutual benefit of the student and the institution. For the purpose of exclusion, then, it is necessary for the Court to determine that the primary purpose of the payment is to further the education and training of the recipient rather than to compensate him for services rendered or to be rendered which directly benefit the payor. See *Woddail v. Commissioner,* 321 F.2d 721 (10th Cir. 1963); *Ussery* v. *United States,* 296 F.2d 582 (5th Cir. 1961); *Howard Littman,* 42 T.C. 503 (1964); *Alex L. Sweet,* 40 T.C. 403 (1963); *Wrobleski* v. *Bingler,* 161 F.Supp. 901 (W.D.Pa. 1958).

"An investigation of the legislative history of Section 117(a) reveals that Congress intended to liberalize the Internal Revenue treatment of scholarships. *Any* compensation for part-time employment was originally taxable as income unless the service of the recipient was no more than nominal. *See* H. Rept. No. 1337, 83d Cong., 2d Session, p. 17 (1954) [U.S.Code Cong. & Admin.News 1954, p. 4173]. It would appear that Congress intended to promulgate a purely mechanical test which would eliminate any exercise of discretion by either the Internal Revenue Service or the courts in determining the taxability of scholarship payments. The Senate Finance Committee in its report announced:

' * * * A new sentence has been added at the end of paragraph (1). It provides that if teaching, research, or other services are required

of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, *such teaching, research, or other service* shall not be regarded as part-time employment within the meaning of this paragraph. The purpose of this provision is to make clear that services which constitute a part of the regular curriculum, or of the regular course of study leading to a particular degree, are not within paragraph (1). For example, if all candidates for a particular education degree are required, as a part of their regular course of study, to perform part-time practice teaching services, such services are not regarded as part-time employment for purposes of section 117(b)(1). S. Rept. No. 1622, 83d Cong., 2d Sess., p. 188–189 (1954) [U.S.Code Cong. & Admin.News 1954, p. 4173].' (Emphasis supplied.)

* * * * * *

"In the instant case, graduate assistants 'teach' one course per quarter, with supervision. All those involved in the master's or doctoral program are required to teach; only those students with fellowships are paid. No commitment is secured from the student regarding his responsibility once a degree is awarded. No seniority or fringe benefits accrue.

"It therefore appearing to the Court that the stipend received by the plaintiff, Barbara Logan, falls within the exclusion from income created by Sec. 117 of the Internal Revenue Code, it is

"ORDERED that plaintiffs' motion for summary judgment is well taken and should be and hereby is granted."

The evidence obtained from the Chairman of the Department of English Language and Literature at the University of Toledo appears in the government affidavit secured from him in which he states:

"The primary function of the Graduate Assistant program is to provide a

financial means whereby graduate students may meet the expenses of their education and thus pursue their studies."

The government's evidence rests upon affidavits of University Administrative personnel, as well as on copies of certain financial items and records of the University of Toledo. These are relied upon to confer taxable income; and the Government in its brief states that "it is clear that the principal purpose served by the assistantship program here was to benefit the University/grantor."

An investigation of the Legislative History of Section 117(a) shows that Congress was deeply concerned with liberalizing the Internal Revenue treatment of scholarships, which, up to that time, had been taxable as income—and, after that time, the law was changed so that they were not taxable as income as part-time employment.

In repeating a portion of the court's opinion that it "should be obvious that any scholarship requiring the recipient to perform certain tasks works to the mutual benefit of the student and the institution," the court remarked that "for the purpose of exclusion, it is necessary for the court to determine that the primary purpose of the payment is to further the education and training of the recipient rather than to compensate him for services rendered or to be rendered which directly benefit the payor;" and the court held that the primary purpose of the payment in this case was to further the education and training of the recipient.

The performance of teaching services was clearly a part of the regular course of study required by the Department of English at Toledo University leading to the Ph.D. degree in 1969.

The government's chief claim is that the payments made to Barbara Logan by the University for teaching constituted gross income and were taxable on the ground that "Candidates for a Ph.D. degree were required to teach, but only in conjunction with the instructional seminars in composition, literature, and language and linguistics." These requirements were set up by the University. But these seminars were not offered for credit prior to the Fall of 1969. No prescribed instructional seminar was taken by Barbara Logan prior to the Fall of 1969. *However, the University's requirement that candidates for the Ph.D. degree be required to take one of the prescribed instructional seminars, could be waived for candidates with prior college teaching experience.* Although Barbara Logan, as a candidate for the Ph.D. degree, did not take one of the prescribed instructional seminars, she did engage in prior college teaching and she did teach during the time she was working for her Ph.D. degree; and the instructional seminars were clearly waived in her case by the University.

As a candidate for the Ph.D. degree, the requirement that she take one of the prescribed instructional seminars would be, and *was,* waived because of her prior college-teaching experience, in accordance with the evidence of the Director of Graduate Studies on the subject of the options of the University's rules on instructional seminars and doctorate programs.

There is no merit to the government's argument that the payments made to Mrs. Logan for teaching were not the relatively disinterested "no string" educational grants that comprise excludable scholarships under Section 117(a).

According to appellant's evidence, Dr. William N. Free, Chairman of the Department of English Language and Literature at the University, stated in an affidavit:

"The primary function of the Graduate Assistant program is to provide a financial means whereby graduate students may meet the expenses of their education and thus pursue their studies. The use of Graduate Assistants does not replace regular faculty members as instructors for either the freshman composition course or the sophomore literature course.

"There is no obligation for a Graduate Assistant to remain with the Uni-

versity nor any obligation for the University to hire a Graduate Assistant upon completion of studies or receipt of a degree. The Graduate Assistant is not under contract with the University, nor does such person receive any seniority ranking or consideration for tenure employment. A Graduate Assistant does not receive any of the fringe benefits made available to full-time faculty members such as hospitalization, retirement contributions or group insurance."

So much for appellant's argument that the payments made to Mrs. Logan were not the relatively disinterested "no string" excludable scholarships under Section 117(a).

As the District Court remarked in its opinion, the Section in question is so clear that "one would necessarily need to consult a lawyer to effectively misconstrue it."

In my opinion, the judgment of the District Court should be affirmed.