**Michael COONEY, M.D. and Karen Cooney, Plaintiffs-Appellants,**

v.

**The UNITED STATES of America, Defendant-Appellee.**

No. 78–3469.

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1980.

Decided Aug. 12, 1980.

---

10. 553 F.2d 1360 (D.C.Cir.1977).

David M. Buda, Columbus, Ohio, for plaintiffs-appellants.

James C. Cissell, U.S. Atty., Columbus, Ohio, Robert T. Carney, U.S. Dept. of Justice, Tax Division, Washington, D.C., M. Carr Ferguson, Gilbert Andrews, Mary Jennings, Richard W. Perkins, Robert Pomerance, Joan I. Oppenheimer, Washington, D.C., for defendant-appellee.

Before ENGEL and KENNEDY, Circuit Judges, and CECIL, Senior Circuit Judge.

ENGEL, Circuit Judge.

Dr. Michael Cooney appeals from a judgment of the district court denying him relief in his suit for a refund of 1971 personal income taxes in the amount of $754.36.

The sole issue in this appeal is whether certain payments received by Dr. Cooney during his resident internship at the Mt. Carmel Hospital in Columbus, Ohio, were excludable from gross income as a fellowship grant or scholarship within the meaning of section 117 of the Internal Revenue Code of 1954.[1] The district court determined that the amounts received did not qualify as a fellowship grant or scholarship but were given as compensation for services rendered to the hospital. While our circuit has not expressly addressed the application to medical internship programs of section 117, and the regulations promulgated thereunder, we note that other circuits have uniformly denied the exclusion. We follow that authority and affirm the judgment of the district court.

Under section 61 of the Internal Revenue Code of 1954 and section 1.61–1 of the Treasury Regulations on Income Tax, gross income includes all income irrespective of its source, unless excluded by law. Income

---

1. I.R.C. section 117 provides, in pertinent part:

(a) General rule.—In the case of an individual, gross income does not include—

(1) *any amount received*—

(A) as a scholarship at an educational organization described in section 170(b)(1)(A)(ii), or

(B) as a fellowship grant, including the value of contributed services and accommodations; . . . .

\* \* \* \* \* \*

(b) Limitations.—

\* \* \* \* \* \*

(2) Individuals who are not candidates for degrees.—In the case of an individual who is not a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B).

(A) *Conditions for exclusion.*—The grantor of the scholarship or fellowship grant is—

(i) an organization described in section 501(c)(3) which is exempt from tax under section 501(a).

\* \* \* \* \* \*

(B) Extent of exclusion.—The amount of the scholarship or fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year . . . .

generated from compensation for services is expressly included by section 61(a)(1). 26 U.S.C. § 117, however, provides that in the case of an individual, gross income does not include any amount received as a scholarship or fellowship grant.

The terms "scholarship" and "fellowship" are defined in the Treasury Regulations. More specifically, "fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in pursuit of study or research." Treas. Reg. § 1.117–3(c) (1960).[2] However, "any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor," is not excludable under section 117. Treas.Reg. § 1.117–4(c)(2) (1960).[3]

Dr. Cooney was already duly licensed as a physician by the State of Ohio when he entered Mt. Carmel's internal medicine program in 1971. The hospital's three-year internship and residence Medical Training Program was established under the auspices and approval of the American Medical Association. Residents were expected to benefit the hospital by supplementing the hospital staff. In exchange, residents received the stipend at issue and the training necessary to pass the specialty requirements of the American Medical Association.

Mt. Carmel Hospital, a non-profit charitable institution, provided standard patient care and educational services to members of the medical profession. The hospital maintained classroom and laboratory facilities. A part of each intern's daily routine was devoted to classroom training and each individual followed a course of practical study developed to meet particular career or specialty objectives. Although the hospital provided the training necessary to qualify as a specialist, the program participants were not degree candidates.

The hospital required that each resident work approximately 80 hours per week, in-

2. Treasury Regulation § 1.117–3 provides, in pertinent part:

(a) *Scholarship.* A scholarship generally means an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to a student to aid him in pursuing his studies. The term also includes any amount received in the nature of a family allowance as a part of a scholarship. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in pursuing his studies where the grantor is motivated by family or philanthropic considerations. If an educational institution maintains or participates in a plan whereby the tuition of a child of a faculty member of such institution is remitted by any other participating educational institution attended by such child, the amount of the tuition so remitted shall be considered to be an amount received as a scholarship.

\* \* \* \* \* \*

(c) *Fellowship grant.* A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are fur-

nished or remitted to an individual to aid him in the pursuit of study or research. The term also includes any amount received in the nature of a family allowance as a part of a fellowship grant. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in the pursuit of study or research where the grantor is motivated by family or philanthropic considerations.

3. Treasury Regulation § 1.117–4 specifically lists items not considered as scholarships or fellowship grants:

The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:

\* \* \* \* \* \*

(c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

cluding two "on call" nights and one-half day on Saturday. The district court noted that resident physicians were responsible for providing patient care including, but not limited to: (1) compiling case histories, (2) physical examinations, (3) diagnosis and proposed treatment programs, (4) progress notes on patient charts, (5) emergency room admissions, (6) completion of death certificates, (7) performance of mechanical functions such as spinal taps, bone marrow extractions and intravenous procedures, (8) prescriptions, and (9) post-operative care. All services were performed under the direction and supervision of Mt. Carmel staff physicians. The degree of supervision varied with the skill and experience acquired by each resident physician. Each resident was evaluated at various stages of the training by the director and department chairman to determine satisfactory accomplishment of the required tasks.

Testimony at trial disclosed that the hospital received patients for admission without regard to the educational value of the patient's ailment. Further, hospital administrators stated that Mt. Carmel could not adequately maintain the same volume or standard of care without the benefit of services provided by resident physicians. An intern who failed to render the required services would have been discharged. The amount of stipend payments and other costs incident to the intern and residency program entered into computation of the hospital's daily room rate. The absence of the services provided by the interns and residents would have compelled the hospital to increase the responsibility of certain staff members and hire substitute personnel.

Mt. Carmel provided plaintiff a stipend in the amount of $675.00 per month as an intern and $716.00 per month as a first year resident.[4] The district court noted that the monthly stipend was determined in accordance with prescribed standards of the American Medical Association and was not based upon financial need, hours of service or functions performed at the hospital. The amount of the stipend automatically increased upon marriage and between years of residence. It was paid through the hospital payroll office which withheld state and federal taxes reported on W–2 forms. Other benefits provided by the hospital included enrollment in a group medical insurance plan maintained for hospital employees, laundry services for hospital whites, free parking in a separate lot, and some free meals. Further, participants were allowed paid vacations of one week during the internship and two weeks during the first year of residency. Additionally, reimbursement was made for expenses incurred in attending one professional conference each year.

The validity of Treasury Regulation § 1.117–4(c) was upheld in *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969). In *Bingler*, the Supreme Court stated that "the definitions supplied by the regulation [section 1.117–4(c)] clearly are *prima facie* proper, comporting as they do with the ordinary understanding of scholarships and fellowships as relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." *Id.* at 751, 89 S.Ct. at 1445.

Plaintiff contends that the stipend received from the hospital in 1971 was paid to him primarily to further his medical education and training. The district court, however, relied on *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), in ruling that "the payments received by plaintiff during the period in question do not meet the standard of relatively disinterested 'no strings' educational grants . . . . The court finds that there were substantial conditions attached to the grants which exceed the incidental duties which are compatible with the characterization of the stipend as a scholarship or fellowship." The court noted that the payments received by plaintiff had all indicia of compensation and

---

**4.** Testimony at trial disclosed that a physician with comparable education and experience, who elected to enter a general medical practice rather than train for a specialty, could have earned from $40,000 to $50,000 annually at the time of plaintiff's internship and residency.

were given as the "quo" in return for the "quid" of services rendered. Plaintiff's argument that resident physicians benefited by learning under the supervision of experienced doctors and received less compensation then they might otherwise have anticipated was rejected by the district court since it did not alter the fact that compensation for substantial services was rendered.

Plaintiff asserts that the district court too narrowly restricted the access to the exclusion provided by section 117 and urges us to adopt the "primary purpose" standard employed by the Tax Court in *Chandler P. Bhalla*, 35 T.C. 13 (1960). Suffice it to say, however, that *Bhalla*, although substantially different upon its facts, specifically recognizes that the question of primary purpose or necessity must be resolved on a factual basis and depends upon the facts and circumstances in each particular case. *Id.* at 17. So viewed, the eligibility test as stated in *Bhalla*, does not compel a reversal here. We are unable to find that the district court's findings of fact are clearly erroneous, nor can we dispute the dispositive treatment of this issue in the court's conclusions of law.

In *Stewart v. United States*, 363 F.2d 355 (6th Cir. 1966), our court ruled that:

> consideration of the facts as indicia of compensation for services is a more meaningful test than that of whether the stipend was primarily for the benefit of the grantors. Obviously, in all instances where an employment relationship—past or future—is involved, there is at least some mutuality of benefit.

*Id.* at 357. *See also Bingler, supra*, 394 U.S. at 756 n. 30, 89 S.Ct. at 1448; *Logan v. United States*, 518 F.2d 143, 146 (6th Cir. 1975). It is apparent that the factors previously outlined are indicative of an employment relationship. Although the stipend payments did serve to further Dr. Cooney's education and training, the indices of compensation in Mt. Carmel's program are too strong to avoid the application of *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969). Decisions after *Bingler* almost uniformly hold that payments such

as those under consideration here are not excludable from income under section 117. The facts in *Meek v. United States*, 608 F.2d 368 (9th Cir. 1979), are almost indistinguishable from those here. *See also Parr v. United States*, 469 F.2d 1156, 1157 (5th Cir. 1972); *Hembree v. United States*, 464 F.2d 1262 (4th Cir. 1972).

Accordingly, the district court properly held that the stipend paid to Dr. Cooney by Mt. Carmel Hospital constitutes taxable income which is not excludable as a scholarship or fellowship grant within the meaning of Section 117.

Affirmed.