BENJAMIN TAYLOR, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 11979-78.
United States Tax Court
T.C. Memo 1982-163; 1982 Tax Ct. Memo LEXIS 579; 43 T.C.M. (CCH) 949; T.C.M. (RIA) 82163; March 30, 1982. Benjamin Taylor, Jr., pro se. Warren P. Simonsen, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: Respondent determined a deficiency of $ 2,320 in petitioner's Federal income tax for 1975. Other issues having been resolved by agreement of the parties, the sole issue for decision is whether $ 3,600 of the $ 16,716.80 petitioner received as a staff fellow at the National Cancer Institute (NCI) of the National Institutes of Health (NIH) constitutes a fellowship excludable from his gross income under section 117(a)(1)(B). [1]
*580 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference. At the time he filed his petition, petitioner resided in Reading, Pennsylvania. He timely filed an individual Federal income tax return for 1975 with the Director of the Philadelphia Service Center. Petitioner received a B.A. in chemistry from Hampton Institute in 1963 and a Ph.D. in organic chemistry and biochemistry from the University of Pennsylvania in 1973. During 1975, petitioner was not a candidate for a degree. In May of 1974, petitioner was appointed for a two year term to the Staff Fellow Program at NCI. The purpose of the Staff Fellow Program was to strengthen research in the biomedical sciences by fostering a continual exchange of talented scientists between the NIH and other research centers and by creating a reservoir of trained personnel for future services at the NIH and other research institutions. Petitioner chose to work in the toxicology lab. His research, however, was supervised and he was assisted in the planning and development of his research by his immediate supervisor. Having done graduate *581 work on the alkylation products of nitrogen mustards, petitioner's primary research at NCI was directed at finding out the different species that could be produced in terms of alkylating DNA, the genetic material in cells. The Staff Fellow Program required petitioner to pursue research on a full time basis of between 40 to 60 hours per week. Petitioner submitted annual reports on his research which were discussed with his laboratory chief and when he left NCI, petitioner gave his notebooks outlining his research to NCI. Any copyrights or patents resulting from petitioner's research would belong to the NIH. When petitioner decided to teach a course at another institution during his normal working hours at NCI, he was required first to secure NCI's permission. Petitioner received the same number of sick and annual leave days as any NCI employee. As a participant in the program at NCI, petitioner chose to be covered by the Federal Employees Group Life Insurance program and he received credit, for Federal retirement benefit purposes, for the time of his service in the program. Payments to petitioner were not based on need and Federal taxes were withheld on the entire amount he *582 received. Presently, petitioner is a member of a class action suit against NCI for alleged discriminatory practices. The class is defined as approximately 250 black employees of NCI. After his participation in the program at NCI, petitioner was not employed in a permanent capacity there. Petitioner's argument is that because no minority staff fellow was subsequently employed by NCI/NIH, there was no future consideration present. Therefore, he contends, since NCI maintains a policy which excludes black scientists from other than the training aspects of the Staff Fellowship Program, his appointment should be viewed as a fellowship excludable under section 117. Respondent, on the other hand, asserts that since petitioner performed substantial and significant research services for NCI while at NIH, the amounts petitioner received from NCI in 1975 are compensation for services rendered to the Laboratory of Toxicology and not a scholarship or fellowship grant excludable from income under section 117. OPINION Section 117 provides for an exclusion of fellowship grants in an amount limited to $ 3,600 a year for nondegree candidates. Section 1.117-4(c), Income Tax Regs., provides *583 that amounts paid as compensation for past, present or future services or primarily for the benefit of the grantor are not fellowship grants. In sustaining the validity of this regulation, the Supreme Court, in Bingler v. Johnson,394 U.S. 741, 751 (1969), emphasized the distinction between payments given in return for a quid pro quo and those which were essentially disinterested "no-strings" educational grants, with only the latter entitled to an exclusion. This case involves a factual question on which petitioner bears the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. See Cooney v. United States,630 F.2d 438 (6th Cir. 1980). The facts here indicate that the payments to petitioner were for compensation of an employee. Taxes were withheld as with any employee and petitioner was provided with fringe benefits characteristic of an employer-employee relationship. See Weinberg v. Commissioner,64 T.C. 771 (1975). Similarly, petitioner needed to secure permission from NCI to engage in outside activities during normal working hours. The amounts *584 of the stipends were not dependent on petitioner's financial need, normally a quality of a fellowship grant (see Proskey v. Commissioner,51 T.C. 918 (1969)) and, although petitioner may have been provided with a learning experience, NCI guided his research, retained his notebooks, and was entitled to any resultant patents or copyrights. See Adams v. Commissioner,71 T.C. 477 (1978). Indeed, petitioner does not really dispute the compensatory nature of the payments but presents a social policy argument against their being characterized as such. Whatever the merits of petitioner's class action suit against NCI, [2] he may not solely on that basis reclassify himself as a fellowship recipient for tax purposes. Despite his claim that the payments could not be for future services because NCI allegedly did not hire any minority scientists for subsequent permanent positions, petitioner nevertheless received payments for his concurrent services of performing research duties for NCI. Because we have found that the payments made to petitioner in 1975 were *585 compensation for services, we find that they are includable in his gross income under section 61 and not, as petitioner contends, excludable under section 117. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise stated.↩
2. For the purpose of that suit, incidentally, he is classified as a former employee of NCI.↩